IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAMEON DALEY,** | : | **CIVIL NO. 1:CV-10-02060** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **HARLEY LAPPIN,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

# M E M O R A N D U M

Plaintiff Dameon Daley ("Daley"), an inmate currently incarcerated at the United States Penitentiary in Lewisburg, Pennsylvania ("USP-Lewisburg"), filed this *Bivens*[1]-styled complaint against a Federal Bureau of Prisons ("BOP") official and several USP-Lewisburg officials[2] (collectively, "Defendants") on October 5, 2010.  (Doc. 1.)  Daley alleges that Defendants denied him a diet consistent with his Rastafarian religious beliefs.  He also alleges that he has been forced to eat food to which he is allergic and has been forced to exist primarily on apples and bread, which has resulted in him becoming malnourished.  As relief, Daley seeks compensatory and punitive damages, as well as declaratory relief.

---

[1] *Bivens* actions are the federal counterpart to § 1983 claims brought against state officials.  *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004) (citing *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 800 (3d Cir. 2001)).  "[C]ourts have generally relied upon the principles developed in the case law applying section 1983 to establish the outer perimeters of a *Bivens* claim against federal officials."  *Schrob v. Catterson*, 948 F.2d 1402, 1409 (3d Cir. 1991).

[2] Named as Defendants are Harley Lappin, Director of BOP; B.A. Bledsoe, Warden; K. Rear, Associate Warden; and, D. Young, Associate Warden.  Daley also names the United States of America and the BOP as Defendants.

Before the court is a motion to dismiss, or in the alternative, for summary judgment, filed on behalf of all Defendants.  (Doc. 23.)  For the reasons set forth below, the motion for summary judgment will be granted.

## I.    Background

In addressing the instant motion, the court will first set forth the relevant facts and procedural history.  In setting forth the relevant facts, the court will note any factual disputes between the parties by presenting both parties' contentions.[3]

### A.    Facts

#### 1.    Facts Relating to Religious Beliefs and Practices & Food Allergies and Consumption

The BOP has guidelines which afford inmates equitable opportunities to pursue religious beliefs and practices consistent with the security and orderly

---

[3] In his counter statement of material facts Daley sets forth what he terms as a "list of genuine issues of material fact that require the denial of defendants' motion."  (Doc. 37.)  These issues do not necessarily set forth facts intended to counter Defendants' statement of material facts, rather they raise subjects that he purportedly would like the court to address.  By way of example, Daley sets forth the following issues:

> 11.  Whether plaintiff is being forced to eat food that violates his religious beliefs.
> 12.  Whether the Alternative Diet Program affords plaintiff adequate and equitable opportunities to observe his religion's dietary laws.
> 13.  Whether the plaintiff's request to be served a "kosher vegan" meal would have negative consequences on guards and other inmates and on the allocations of prison resources and the availability of alternatives.

(*Id*. at 2-3.)  Thus, where applicable, the court will construe a relevant issue in Daley's counter statement of facts as opposing Defendants' statement of material facts.

running of the institution and the BOP.  (Doc. 25 ¶ 18.)  BOP Program Statement

5360.09, *Religious Beliefs and Practices*, as codified at 28 C.F.R. § 548.10-548.20,

states, in pertinent part: "The Bureau provides inmates requesting a religious diet

reasonable and equitable opportunity to observe their religious dietary practice

within the constraints of budget limitations and the security and orderly running of

the institution and [BOP] through a religious diet program."  (*Id*.; Doc. 25 ¶ 18.)

The BOP's religious diet program, entitled the Alternative Diet Program,

consists of two distinct components: (1) inmate self-selection from the main line,

which includes a no-flesh option and access to the salad/hot bar, which is part of

the food service program, and (2) a nationally recognized, religiously certified

processed food component.  (Doc. 25 ¶ 19.)  As to the first component, the no-flesh

option is provided at both the noon and evening meals whenever an entree

containing flesh is offered.  (*Id*. ¶ 20.)  Further, vegetables and starches seasoned

with flesh will have an alternate no-flesh option.  (*Id*. ¶ 21.)  As to the second

component, also known as the Certified Religious Diet, the certified food

component (kosher) is a nationally approved certified food menu, which is served

to all inmates who are approved to participate in that diet.  (*Id*. ¶ 22.)  All certified

food components are nutritionally adequate, certified by a nationally recognized

Orthodox Standard, and certified kosher.  (*Id*. ¶ 23.)  Finally, other nutritionally

adequate food items can be purchased from the institution's commissary that

would meet an inmate's religious diet requirements.  (*Id*. ¶ 26.)

3

Daley is a member of the Rastafarian faith.  (Doc. 1 at 5; Doc. 25 ¶ 24.)  In his complaint, Daley asserts that among his beliefs and customs is the strict abstention from foods containing animal by-products and foods prepared with, or served on, vessels and using utensils which have come into contact with pork. (Doc. 1 at 5.)  He claims that the "ideal" diet for Rastafarian is the "Ital" diet.  (*Id*.) According to Daley, the lowest acceptable standard a diet must meet in order to be certified "Ital" is: "a) It must be plant source based; b) It must be free of all forms of animal proteins and animal by-products; and [c]) It must not have been prepared with, or served on, or in utensils and vessels which have come into contact with, or used in the preparation of, pork."  (*Id*.)  He asserts that the closest equivalent to the "Ital" diet is a "Kosher vegan" diet.  (*Id*. at 5-6.)

In a declaration filed by Daley in opposition to the instant motion, Daley provides the following additional information relating to his religious beliefs:

> 4.  I am an Orthodox Rastafarian from the Nyahbinghi sect.  I have been a Rastafarian for over 19 years.  The common misconception among the unlightened regarding Rastafarians and our beliefs and practices is that our faith has no doctrine and is largely personal-individualistic.  As an Orthodox Rastafarian I subscribe to the monophysite doctrine and maintain a particular diet in which I abstain from all forms of animal proteins and food prepared in vessels used to prepare pork.
>
> 5. As an Orthodox Rastafarian I observe the rituals and dietary laws practiced by the Nyahbinghi.  Although the Rastafarian faith has three separate and distinct houses; the Nyahbinghi; the Twelves Tribes, and the Bob-Ashanti, there is only one recognized Rastafarian diet.  The Ital diet is defined as a "natural, organically grown, plant source-

4

> based, low sodium, animal protein/animal by-products free foods,
> which is prepared in such a manner that it never comes into contact
> with any form of animal protein or vessels used to prepare and serve
> pork and its by-products.  In non-Rastafarian terms the Ital diet would
> be defined as a "natural, organic, low sodium Kosher vegan diet."

(Doc. 38 ¶¶ 4, 5.)

In his exhibits submitted in support of his brief in opposition to the instant

motion, Daley submits an entry on "Ital" from Wikipedia which includes, *inter*

*alia*, the following statements about Rastafarianism and the "Ital" diet:

> . . . there is no single dogma of Rastafarian belief.  Due to this
> emphasis on individual personal meditation in Rastafari, the
> expression of Ital eating varies widely from Rasta to Rasta, and there
> are few universal "rules" of Ital living. . . .   Many adherents to Ital
> diets are strict vegans, as they do not consider dairy to be natural for
> human consumption either.  However, consumption of fish,
> particularly those less than 12 inches in length, is often practiced
> within Rasta Ital diets. . . . [M]ost Rastas avoid the eating of pork. . . .
> Few adherents of ital follow the strictest interpretation; some Rastas
> do not adhere to them at all.

(Doc. 40 at 55-56.)  He also submits the BOP's current and former certified

religious menus, both which contain vegan and vegetarian menu items.  (*Id*. at 61-

70.)

Daley also attaches a number of documents relating to his food allergies.

Two responses from the Food Services Administrator and K. Rear, dated August 5,

2010 and August 26, 2010, respectively, informing Daley that there is nothing in

his medical history that indicates he has any allergies to foods.  (*Id*. at 20, 21.)

There is also an inmate request to staff form filed by Daley on March 9, 2011, in

which he acknowledges that test results indicate he is not allergic to any foods,

including eggs or dairy.  (*Id*. at 75.)  In response to his question as to the accuracy

of the test, USP-Lewisburg's medical department suggested that Daley perform the

"elimination test," which involves trying various foods in order to eliminate them

as an allergy.  (*Id*. at 76.)  Indeed, Defendants have submitted the results of Daley's

allergy tests performed on September 21, 2010, which indicate no allergies.  (Doc.

24-1 at 12-17, Attach. C.)  However, a Special Diet Order from the Federal

Transfer Center in Oklahoma City, Oklahoma, dated November 14, 2009, indicates

that Daley is allergic to "dairy, eggs, milk."  (Doc. 40 at 46.)

Finally, Daley attaches the declaration of inmate Ricky Jerome Smith in

which Smith asserts that he has witnessed BOP staff at USP-Lewisburg provide

two other Rastafarians with vegan diets.  (*Id*. at 78.)  Attached to that declaration is

a memorandum from USP-Lewisburg's Clinical Director to the Food Services

Administrator that directs him to provide inmate Smith with "raw vegetables, raw

fruit, whole grain cereal, salad mix, peanut butter, wheat bread, and any other all

natural, non-animal derived products that may be available.  A balanced mix of the

above items should be given for each meal to meet his dietary needs."  (*Id*. at 80.)

Inmate Smith states that he is of the NuWabian faith.  (*Id*. at 78.)


## 2.    Facts Relating to Exhaustion of Administrative Remedies

As set forth above, in his complaint Daley alleges that Defendants denied him a diet consistent with his Rastafarian religious beliefs.  He also alleges that he has been forced to eat food to which he is allergic and has been forced to exist primarily on apples and bread, which has resulted in his becoming malnourished. As of the date Defendants filed a complete record of Daley's requests for administrative remedies, or June 29, 2011, Daley had filed 152 requests.[4]  (*See* Doc. 48.)  The following requests for administrative remedy relate to the claims set forth in his complaint.

On February 9, 2010, while he was incarcerated at the Federal Correctional Complex in Oakdale, Louisiana ("FCC-Oakdale), Daley filed grievance number 576252-F1, alleging that the common fare menu violates his religious dietary laws. (Doc. 48-1 at 9; Doc. 1-2 at 12.)  In the grievance, Daley requested additional Kosher vegan substitutes be added to the menu or, in the alternative, that he be permitted to purchase certain food items from the commissary.  (Doc. 1-2 at 12.) FCC-Oakdale's warden denied Daley's request on February 19, 2010, recounting the two components of the BOP's Alternative Diet Program, and informing Daley that an alternative vegan substitute does not fall within either of the two components.  (Doc. 48-1 at 9; Doc. 1-2 at 11.)  On March 1, 2010, Daley appealed

---

[4] Even though Defendants filed the record with the court on July 5, 2011, the declaration of Michael Romano, the BOP official who retrieved the record, is dated June 29, 2011.  (*See* Doc. 48.)  The declaration verifies the accuracy of the administrative remedies record, attached thereto as an exhibit.  (*See id.*)

the decision to the Regional Director with grievance number 576252-R1.  (Doc.

48-1 at 13; Doc. 1-2 at 8.)  The Regional Director denied Daley's request on March

24, 2010.  (Doc. 48-1 at 12; Doc. 1-2 at 8.)  On April 14, 2010, Daley appealed that

decision to the BOP's Central Office, which denied the appeal on September 8,

2010.  (Doc. 48-1 at 19.)

On April 21, 2010, Daley filed grievance number 586603-F1, alleging that

he had been sent twenty-one (21) consecutive meals containing non-kosher food

and food to which he is allergic from March 29, 2010 to April 4, 2010.  (*Id*. at 20;

Doc. 40 at 11.)  The request was denied on May 10, 2010.  (Doc. 48-1 at 20; Doc.

40 at 12.)  In that denial, FCC-Oakdale's warden informed Daley that his medical

file reveals no documented food allergies.  (Doc. 40 at 12.)  On May 14, 2010,

Daley appealed the decision to the Regional Director with grievance number

586603-R1, who denied it on September 17, 2010.  (Doc. 48-1 at 23; Doc. 40 at

30.)  In that denial, the Regional Director noted that the meals provided to Daley

contained Kosher and non-Kosher alternative components.  (Doc. 40 at 30.)  On

October 12, 2010, Daley appealed that decision to the BOP's Central Office, which

denied the appeal on October 29, 2010, stating that Daley's appeal was illegible.

(*Id*. at 27.)  Daley resubmitted his appeal on November 22, 2010, and it was denied

on December 14, 2010.  (*Id*. at 28.)

In his exhibits submitted in support of his brief in opposition to the instant

motion, Daley attaches inmate request to staff forms addressed to K. Rear and an

8

associate warden and dated September 16 and 17, 2010, respectively, in which he complains, *inter alia*, that he has been forced to eat primarily bread, fruit, and peanut butter because he cannot eat the common fare diet, and that he has food allergies. (Doc. 40 at 24-25, 27-29.) A response from USP-Lewisburg's warden dated September 28, 2010, informs Daley that laboratory studies to test for items that he claims to be allergic were collected on September 21, 2010, and that once the results are received, if necessary, a diet would be tailored to meet Daley's medical needs.[5] (*Id*. at 31.) There is also a response from K. Rear dated September 28, 2010, which reminds Daley that he has chosen the Certified Religious Diet and that commissary items for sale are chosen by the warden and designated staff and are meant to complement, not supplement, the diets provided to inmates. (*Id*. at 31.) There is no record of Daley appealing these responses.

On December 10, 2010, while incarcerated at USP-Lewisburg, Daley filed grievance number 618264-F1, requesting food to which he is not allergic, or a vegan or alternative diet. (*Id*. at 30.) The request was rejected for not attempting informal resolution prior to filing his grievance. (*Id*.) On December 28, 2010, Daley appealed the decision to the Northeast Regional Director with grievance number 618264-R1. (*Id*. at 31.) The Northeast Regional Director rejected the

---

[5] Defendants' computerized record of Daley's requests for administrative remedies does not list a response from the USP-Lewisburg warden with this date. (*See* Doc. 48.)

9

appeal, instructing Daley to follow the instructions given at the institutional level. (*Id*.)  There is no record of Daley appealing that decision.

On January 11, 2011, Daley filed grievance number 622023-F1, requesting a special diet.  (*Id*. at 32.)  The request was denied on January 21, 2011.  (*Id*.)  On February 7, 2011, Daley appealed the decision to the Northeast Regional Director with grievance number 622023-R1.  (*Id*. at 33.)  The Northeast Regional Director denied the appeal on February 11, 2011.  (*Id*.)  On April 4, 2011, Daley appealed that decision to the BOP's Central Office, which denied the appeal on April 7, 2011.  (*Id*. at 35.)

## B.   **Procedural History**

Daley filed his complaint on October 5, 2010.  (Doc. 1.)  On January 28, 2010, Defendants filed their motion to dismiss and for summary judgment.  (Doc. 23.)  Daley filed his brief in opposition to the motion on May 9, 2011.  (Doc. 39.) After Defendants filed their reply on May 17, 2011, (Doc. 44), the court directed Defendants to file a complete record of Daley's requests for administrative remedies, (Doc. 47.)  Defendants filed the record on July 5, 2011. (Doc. 48.)  Thus, the motion is now ripe for disposition.

## II.   **Standards of Review**

## A.   **Motion to Dismiss**

Defendants have filed a motion which, in part, seeks dismissal of the complaint on the grounds that Daley has failed to state a claim upon which relief can be granted, as provided by Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The motion, however, goes beyond a simple motion to dismiss under Rule 12(b)(6) because it is accompanied by evidentiary documents outside the pleadings contravening Daley's claims.  Rule 12(d) provides as follows:

> If, on a motion under Rule 12(b)(6) or (12)(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

FED. R. CIV. P. 12(d).  The court will not exclude the evidentiary materials accompanying Defendants' motion to dismiss because Daley has also been given a reasonable opportunity to present material relevant to the motion.  Thus, Defendants' motion to dismiss and for summary judgment shall be treated solely as seeking summary judgment.

### B.  **Motion for Summary Judgment**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001).  A factual dispute is "material" if it might affect the outcome of the

11

suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis

that would allow a reasonable fact-finder to return a verdict for the non-moving

party. *Id.* The court must resolve all doubts as to the existence of a genuine issue

of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232; *see*

*also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

Once the moving party has shown that there is an absence of evidence to

support the claims of the non-moving party, the non-moving party may not simply

sit back and rest on the allegations in its complaint. *See Celotex Corp. v. Catrett*,

477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its]

own affidavits, or by the depositions, answers to interrogatories, and admissions on

file, designate specific facts showing that there is a genuine issue for trial." *Id.*

(internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted).

Summary judgment should be granted where a party "fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and

on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at

322. "'Such affirmative evidence – regardless of whether it is direct or

circumstantial – must amount to more than a scintilla, but may amount to less (in

the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232

(quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

## III.   **Discussion**

As set forth above, Daley has alleged that Defendants denied him a diet consistent with his Rastafarian religious beliefs; that he has been forced to eat food to which he is allergic; and, that he has been forced to exist primarily on apples and bread, which has resulted in his becoming malnourished.  In the instant motion, Defendants argue, *inter alia*, that certain Defendants are entitled to sovereign immunity; that Daley failed to exhaust his administrative remedies with respect to two of his claims; and that he has failed to state a claim with respect to his remaining claims.  The court will address these issues in turn.

### A.   **Sovereign Immunity**

In the instant motion, Defendants argue that the United States and the BOP should be dismissed as a parties in this *Bivens* action because they are not properly named parties.  Further, Defendants argue Daley's suit against Defendants, to the extent that they are being sued in their official capacity, is barred by sovereign immunity.  The court agrees.

13

It is well-settled that the United States and its federal agencies, such as the

BOP, cannot be named as Defendants in a *Bivens* action.  As stated in *Reynolds v.*

*Fed. Bureau of Prisons*, Civ. No. 09-3096, 2010 WL 744127 (E.D. Pa. March 2,

2010),

> While a *Bivens* action may proceed against . . . individual defendants,
> the Supreme Court held that a *Bivens* action cannot be maintained
> against a federal agency.  *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S.
> 471, 485, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994).  Thus, count one
> will be dismissed against the BOP and Office of Inspector General on
> sovereign immunity grounds.  It is well settled that the United States
> Government and its agencies are immune from suit absent a waiver.
> *Id*. at 475; *Zynger v. Dep't. of Homeland Security*, 615 F. Supp. 2d 50,
> 56 (E.D.N.Y. 2009).  No waiver has occurred here.

*Reynolds*, 2010 WL 744127, at *3.  Thus, Defendants the United States and the

BOP will be dismissed from this action.

Similarly, suits against officers in their official capacities are suits against

the entity which an officer is an agent.  *Kentucky v. Graham*, 473 U.S. 159, 165-66

(1985).  Defendants are agents of the BOP.  Therefore, suits against them in their

official capacities are suits against the BOP.  Accordingly, Daley's *Bivens* claims

only extend to the individual BOP Defendants in their individual capacities and not

the BOP itself nor to Defendants in their official capacity.

## B.    Exhaustion of Administrative Remedies

Defendants seek entry of judgment in their favor because Daley failed to

exhaust his administrative remedies with respect to his claims that he has been

forced to eat food to which he is allergic and has been forced to exist primarily on

apples and bread, which has resulted in his becoming malnourished.[6]  The Prison

Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321

(1996), requires a prisoner to present his claims through an administrative

grievance process before seeking redress in federal court.  The act specifically

provides as follows:

> No action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by a prisoner
> confined in any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

A prisoner must exhaust administrative remedies as to any claim that arises

in the prison setting, regardless of any limitations on the kind of relief that may be

gained through the grievance process.  *See Porter v. Nussle*, 534 U.S. 516, 532

(2002); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).  "[I]t is beyond the power

. . . of any . . . [court] to excuse compliance with the exhaustion requirement,

whether on the ground of futility, inadequacy or any other basis."  *Nyhuis v. Reno*,

204 F.3d 65, 73 (3d Cir. 2000) (quoting *Beeson v. Fishkill Corr. Facility*, 28 F.

Supp 2d 884, 894-95 (S.D.N.Y. 1998) (citing *Weinberger v. Salfi*, 422 U.S. 749,

---

[6] Defendants concede that Daley has exhausted his administrative remedies with respect
to his claim that Defendants denied him a diet appropriate for his Rastafarian religion.  (*See* Doc.
25 ¶ 12.)

766 (1975)).  The PLRA "completely precludes a futility exception to its

mandatory exhaustion requirement."  *Nyhuis*, 204 F.3d at 71.  The PLRA also

mandates that an inmate "properly" exhaust administrative remedies before filing

suit in federal court.  *Woodford v. Ngo*, 548 U.S. 81, 92 (2006).  "Proper

exhaustion demands compliance with an agency's deadlines and other critical

procedural rules because no adjudicative system can function effectively without

imposing some orderly structure on the course of its proceedings."  *Id*. at 2386.

Such requirements "eliminate unwarranted federal-court interference with the

administration of prisons, and thus seeks to 'affor[d] corrections officials time and

opportunity to address complaints internally before allowing the initiation of a

federal case."  *Id*. at 2387 (quoting *Nussle*, 534 U.S. at 525).  Failure to

substantially comply with procedural requirements of the applicable prison's

grievance system will result in a procedural default of the claim.  *Spruill v. Gillis*,

372 F.3d 218, 227-32 (3d Cir. 2004).

Further, the United States Court of Appeals for the Third Circuit recently

stated that "there appears to be unanimous circuit court consensus that a prisoner

may not fulfill the PLRA's exhaustion requirement by exhausting administrative

remedies after the filing of the complaint in federal court."  *Oriakhi v. United*

*States*, 165 Fed. Appx. 991, 993 (3d Cir. 2006) (not precedential).  In citing to a

case from the United States Court of Appeals for the Eighth Circuit, *Johnson v. Jones*, 340 F.3d 624, 627-28 (8th Cir. 2003), the *Oriakhi* Court found that the lower court had properly dismissed plaintiff's complaint because his exhaustion attempt took place after he filed his *Bivens* claim.  "[T]he district court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred."  *Oriakhi*, 165 Fed. Appx. at 993 (quoting *Johnson*, 340 F.3d at 627-28).

A prisoner does not have to allege in his complaint that he has exhausted administrative remedies.  *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).  Failure to exhaust available administrative remedies is an affirmative defense.  *Id*. at 295 n.9 (noting that defendants may raise failure to exhaust as the basis for a motion to dismiss).  Therefore, it must be pleaded and proven by the defendants.  *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).

An inmate may challenge any aspect of his or her confinement using the BOP's administrative remedy procedure, which is set forth at 28 C.F.R. §§ 542 *et seq*.  An inmate first must informally present his complaint to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief.  28 C.F.R. § 542.13(a).  If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution

17

where he is confined.  *Id*. at § 542.14(a).  If dissatisfied with the response, he may

then appeal an adverse decision to the Regional Office and the Central Office of

the BOP.  *Id*. at §§ 542.15(a) and 542.18.  No administrative appeal is considered

finally exhausted until a decision is reached on the merits by the BOP's Central

Office.  *Id*. at § 542.15.

     In the instant case, Defendants claim that the record of Daley's requests for

administrative remedies shows that he has not properly exhausted all available

administrative remedies with respect to his claims relating to allergies and

malnutrition, and therefore, the complaint should be dismissed as to those claims.

In his complaint, Daley addresses exhaustion of administrative remedies.  He

claims that he appealed a grievance to the BOP's Central Office on or about April

10, 2010, and has yet, as of the date of the complaint, received a response.  (Doc. 1

at 10.)  Because he has not timely received a response, Daley asserts that he has

exhausted all available administrative remedies.  (*Id*.)  While it may be the case

that Daley did not receive a timely response, it is apparent from the record that the

appeal to which Daley is referring is the one which alleged that Defendants are

denying him a diet appropriate for his Rastafarian religion.  As Defendants have

conceded in the instant motion that Daley has exhausted his administrative

18

remedies relating to that claim, (*see* Doc. 25 ¶ 12), Daley's argument is not
relevant.

In his brief in opposition to the instant motion, Daley alleges that Defendants
have failed to demonstrate that he failed to exhaust his grievances related to his
allergies and malnourishment because they have not filed a complete computer
record of his exhaustion attempts.  (Doc. 33 at 17-21.)  Without such a record, he
argues, Defendants have not sustained their burden of establishing that Daley failed
to exhaust his administrative remedies prior to filing this suit.  (*Id*. at 18-20.)
However, since filing his brief in opposition to the instant motion, Defendants have
filed a complete computer record of Daley's exhausted attempts, (Doc. 40), and
therefore, this argument fails.

Daley also alleges that exhaustion of the grievances relating to allergies and
malnutrition became futile when Defendants either refused to process and return
his informal resolution forms or provide him with new forms.  (Doc. 33, at 20.)  In
support, Daley asserts the following:

> In November 2010 the Unit Team, of Brewer, Hendrickson and
> Lentini was replace[d] by another Unit Team.  On November 17,
> 2010, the plaintiff refiled the BP-8 his previous team had repeatedly
> refused to return.  On December 21, 2010, Food Service
> Administrator J. Rogers responded to the plaintiff's BP-8 and
> informed him that "On August 5, 2010, I responded to a similar
> request by you." . . .   That August 5, 2010 response is the same BP-8

19

> that Defendants refused to return. . . .  It is evident that prison officials intentionally hindered the plaintiff's efforts to exhaust.

(*Id*. at 21.)  The record, however, belies Daley's assertions that his efforts to exhaust have been hindered.  Specifically, as set forth above, Daley filed grievance number 586603-F1 on April 21, 2010, alleging that he had been sent twenty-one (21) consecutive meals containing non-kosher food and food to which he is allergic.  (Doc. 48-1 at 20; Doc. 40 at 11.)  That grievance was denied, and Daley did not complete the appeal process until December 14, 2010, over two months after his complaint was received in this court.  (*See* Doc. 40 at 28.)  Further, Daley did not file grievance number 618264-F1 relating to food allergies until December 10, 2010, and did not complete the appeal process.  (*Id*. at 30, 31.) Given this timing, clearly not only did Daley not comply with the BOP's administrative remedy procedure, but he also did not afford prison officials time and opportunity to address his request for administrative remedies prior to commencing an action in this court. *See Woodford*, 548 U.S. at 92.  Therefore, by looking to the timing of the filing of the complaint, it is clear that the court is precluded from reviewing this claim because any exhaustion attempt on the part of Daley could only have taken place after he filed the instant *Bivens* claim.  *See Oriakhi*, 165 F. App'x at 993.

Even if the court did excuse exhaustion and review the merits of this claim, upon reviewing the record submitted in this case, it is apparent that not only does

20

Daley fail to have food allergies, but he also acknowledges that fact.[7]  (*See* Doc. 33 at 75) ("The results of a recent blood test which was performed to determine whether I was still allergic to [eggs and dairy] cam back negative.").  Therefore, the motion as to this claim will be granted in favor of Defendants.

Further, the record shows that Daley did not complete the appeals process with respect to his claims of malnutrition.  Daley filed relevant inmate request to staff forms on September 16 and 17, 2010, but did not appeal the September 28, 2010 denials of these requests.  (*See* Doc. 40 at 31.)  Given Daley's failure to appeal, clearly not only did he not comply with the BOP's administrative remedy procedure, but he also did not afford prison officials time and opportunity to address his request for administrative remedies prior to commencing an action in this court.  *See Woodford*, 548 U.S. at 92.  Therefore, by looking to the timing of the filing of the complaint, it is clear that the court is precluded from reviewing this claim because any exhaustion attempt on the part of Daley could only have taken place after he filed the instant *Bivens* claim.  *See Oriakhi*, 165 F. App'x at 993.

---

[7] In his brief in opposition to the instant motion, Daley argues "Even after giving greater weight to the defendants' reasonings that they did not provide an alternative because there was no evidence in the plaintiff's medical history to suggest that he was allergic to eggs and dairy, their argument still fails because there was also nothing in the records to suggest he wasn't allergic to them either."  (Doc. 39-1 at 20.)  Based on Defendants' submission of the allergy test results and the suggestion of the medical department that to confirm the results, Daley should perform the "elimination test," which as the name suggests, involves trying various foods in order to eliminate them as a source of allergy, Daley's circular argument here fails.

However, even if the court did excuse exhaustion and review this claim on the

merits, upon reviewing Daley's exhibits submitted in support of his brief in

opposition to the instant motion, it is apparent that he has been provided multiple

options of non-flesh foods in his diet plan that conform to the varying Rastafarian

beliefs.  (*See* Doc. 40 at 61-70 (Certified Religious Menus); Doc. 40 at 55-56

(Wikipedia entry on "Ital.")).  Further, the medical records he submitted show that

Daley went on several self-imposed hunger strikes during his alleged periods of

malnutrition.  (*See* Doc. 40 at 72-73) ("[Daley] states if he will be given his diet as

noted by the FSA, then he will end his hunger strike today.").  As such, there is

nothing in the record demonstrating that any malnutrition Daley may have

experienced occurred at the hands of Defendants.  Consequently, the motion as to

this claim will be granted in favor of Defendants.

### C.   First Amendment - Religious Freedom Claim

Daley asserts that BOP officials have denied him the reasonable opportunity

to exercise his right under the free exercise clause of the First Amendment to have

an "Ital" diet while these officials have allowed other inmates the free exercise of

the tenets of their faith.  In the instant motion, Defendants contend that they have

not placed unreasonable burdens on Daley's right to practice his religion.  They

assert that the decision to deny Daley the "Ital" diet was reasonably related to the

compelling government interest of security and safety of staff and inmates in a

penological setting.  They also assert that BOP officials have in fact accommodated

Daley and his religious beliefs.

The Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb -

2000bb-4, forbids the government from "substantially burden[ing] a person's

exercise of religion"[8] unless the government can "demonstrate[ ] that application of

the burden to the person (1) is in furtherance of a compelling governmental

interest; and (2) is the least restrictive means of furthering that compelling

governmental interest."  *Id*. § 2000bb-1(b).  Although the Supreme Court has

declared RFRA unconstitutional as applied to the states, *City of Boerne v. Flores*,

521 U.S. 507 (1997), RFRA still applies to acts of the federal government and its

officials.[9]  *See Gonzalez v. O Centro Espirita Beneficente Uniao do Vegetal*, 546

U.S. 418, 436 (2006) (stating that pursuant to RFRA, the federal government must

---

[8] "Exercise of religion" is defined to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc-5.

[9] In his complaint, Daley also sets forth his freedom of religion claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA").  (Doc. 1 at 11.)  Under RLUIPA, "government" is defined as "a State, county, municipality, or other governmental entity created under the authority of a state," and "any branch, department, agency, instrumentality or official," thereof, and "any other person acting under color of State law."  42 U.S.C. § 2000cc-5(4). Accordingly, federal courts have held that RLUIPA "only applies to state and local governments, not a federal prison."  *Pineda-Morales v. DeRosa*, Civ. No. 03-4297, 2005 WL 1607276, at *4 (D. N.J. July 6, 2005); *see also Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058 (9th Cir. 2008). Because Daley is a federal inmate, the RLUIPA claims will be dismissed.

demonstrate a compelling interest when substantially burdening the exercise of religion).

Under RFRA, initially, an inmate must establish that he possesses a sincerely held, authentic religious belief, the exercise of which the government has substantially burdened. *See Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005). He must then demonstrate that his religious exercise has been burdened substantially by the challenged conduct. *Washington v. Klem*, 497 F.3d 272, 277-78 (3d Cir. 2007). The government substantially burdens religion when it "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs," *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981), or requires an individual to choose between "either abandoning his religious principle or facing criminal prosecution," *Braunfeld v. Brown*, 366 U.S. 599, 605 (1961). *See also Washington*, 497 F.3d at 280 (defining "substantial burden" on religion for RLUIPA purposes as, *inter alia*, "substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs"). If an inmate can show that the government substantially burdens his religion, then the burden shifts to the government to demonstrate that the burden was imposed both in furtherance of a compelling government interest and represents the least restrictive means of furthering that compelling government interest. *See Washington*, 497 F.3d at 282.

In the present case, Daley has failed to demonstrate that Defendants have substantially burdened the practice of his religion, Rastafarianism.  First, there is nothing in the record showing that Daley has not had the opportunity to observe religious holidays, participate in holiday meals, fastings, and prayers.   Second, as to his requested diet, Daley's exhibits submitted in support of his brief in opposition to the instant motion indicate that Rastafarianism emphasizes "individual personal meditation," and the expression of "Ital" living varies widely, with few universal "rules" of "Ital" eating.  (Doc. 40 at 55-56.)  Given this freedom of choice in a Rastafarian diet, as well as the documented choices Daley has been given through the Religious Certified Diet, Daley has failed to show that Defendants placed a substantial burden on his ability to practice his religion.  *See also Jean-Pierre v. Bureau of Prisons*, Civ. No. 09-266, 2010 WL 3852338, at *5-6  (W.D. Pa. July 30, 2010) (finding that inmate failed to establish a substantial burden on his religious practice of Rastafarianism when chaplain removed him from Certified Religious Diet program).  Because Daley has not sustained his burden, the court need not address whether the government has shown that its conduct has been imposed both in furtherance of a compelling government interest and represents the least restrictive means of furthering that interest.  As a result, the motion will be granted in favor of Defendants.

25

### D.   **Equal Protection Claim**

Daley also makes a general allegation that Defendants violated his right to equal protection by refusing to serve him an "Ital" diet or religiously acceptable meal like what is done for similarly situated inmates.  In the instant motion, Defendants argue that Daley has failed to show not only that Defendants intended to discriminate against him, but also that he was treated differently than similarly situated inmates.

"The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).  The Third Circuit has observed that the Equal Protection Clause "is not a command that all persons be treated alike but, rather, 'a direction that all persons *similarly situated* should be treated alike.'" *Artway v. Attorney Gen.*, 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting *City of Cleburne*, 473 U.S. at 439 (emphasis in original).  "Treatment of dissimilarly situated persons in a dissimilar manner by the government does not violate the Equal Protection Clause." *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994).

To prevail here, Daley must show that he was treated differently from persons who are similarly situated, and that this treatment was purposeful or intentional rather than incidental.  *Washington v. Davis*, 426 U.S. 229, 239 (1976);

*Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 423-24 (3d Cir. 2000).

Daley specifically contends that Defendants violated his right to equal protection

by intentionally denying him an "Ital" or vegan diet while providing religiously

acceptable meals to other Rastafarian inmates and inmates of other faiths.  In

support, he has submitted the declaration of inmate Smith, who claims to have

witnessed prison officials serving vegan meals to two other Rastafarians.  (*See*

Doc. 40 at 78.)  Aside from inmate Smith's observations, however, there is nothing

in the record to indicate the circumstances surrounding the serving of such meals

upon other Rastafarians.  Stated otherwise, there is nothing demonstrating that

these two Rastafarians were served vegan meals only because of their religious

beliefs and not for any other reason such as a medical restriction.  As to inmate

Smith himself, Smith claims that a vegan diet is "commensurate with the dietary

laws of my religion."  (*Id.*)  As shown in the record, this is not the case with a

Rastafarian diet.  As put forth by Daley himself, "the expression of Ital eating

varies widely from Rasta to Rasta, and there are few universal 'rules' of Ital

living."  (*Id*. at 55-56.)  Based on this variety in dietary limitations in

Rastafarianism, Daley has failed to establish that he is similarly situated to a

religious follower such as inmate Smith.  In sum, without more, the court cannot

conclude that Defendants intentionally denied Daley an "Ital" diet in order to

27

discriminate against him.  Based on the lack of evidence, Daley has not shown that

Defendants have treated him differently from those who are similarly situated and

that such discrimination was intentional.  Therefore, the motion will be granted in

favor of Defendants as to this claim.

### E.    <u>Preliminary Injunction</u>

Daley has also filed a motion for a preliminary injunction with respect to the

declaratory relief he seeks in the instant action.  Preliminary injunctive relief is

extraordinary in nature and should issue in only limited circumstances.  *See Am.*

*Tel. and Tel. Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1426-27

(3d Cir. 1994), *cert denied*, 514 U.S. 1103.  Moreover, issuance of such relief is at

the discretion of the trial judge.  *Orson, Inc. v. Miramax Film, Corp.*, 836 F. Supp.

309, 311 (E.D. Pa. 1993).  In determining whether to grant a motion seeking

preliminary injunctive relief, courts in the Third Circuit consider the following four

factors: (1) likelihood of success on the merits; (2) irreparable harm resulting from

a denial of relief; (3) the harm to the non-moving party if relief is granted; and (4)

the public interest.  *United States v. Bell*, Civ. No. 1:01-CV-2159, 2003 WL

102610, at *2 (M.D. Pa. Jan. 10, 2003) (Conner, J.) (internal citations omitted).  It

is the moving party that bears the burden of satisfying these factors.  *Id*.  Perhaps

the most important prerequisite for the issuance of a preliminary injunction is a

demonstration that if it is not granted, the applicant is likely to suffer irreparable

harm before a decision on the merits can be rendered.  *See Cont'l Grp., Inc. v.

Amoco Chems. Corp.*, 614 F.2d 351, 356 (3d Cir. 1980).  Irreparable injury is

"potential harm which cannot be redressed by a legal or equitable remedy

following a trial."  *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797,

801 (3d Cir. 1989).  A court may not grant preliminary injunctive relief unless

"[t]he preliminary injunction [is] the only way of protecting the plaintiff from

harm."  *Id*.  The relevant inquiry is whether the party moving for the injunctive

relief is in danger of suffering the irreparable harm at the time the preliminary

injunctive relief is to be issued.  *Id*.  Speculative injury does not constitute a

showing of irreparable harm.  *Continental*, 614 F.2d at 539; *see also Public Serv.

Co. v. West Newbury*, 835 F.2d 380, 383 (1st Cir. 1987).  "The possibility that

adequate compensatory or other corrective relief will be available at a later date, in

the ordinary course of litigation, weighs heavily against a claim of irreparable

harm. *Instant Air Freight*, 882 F.2d at 801 (quoting *Sampson v. Murray*, 415 U.S.

61, 90 (1964)).  Furthermore, a prisoner lacks standing to seek injunctive relief if

he is no longer subject to the alleged conditions he attempts to challenge.  *See

Weaver v. Wilcox*, 650 F.2d 22, 27 n.13 (3d Cir. 1981) (prisoner's transfer from the

prison moots claim for injunctive and declaratory relief with respect to prison

conditions, but not claims for damages).  Here, based on Daley's failure to prevail

on the merits of the instant action, *see supra*, his motion for a preliminary

injunction will be denied.


**IV.    Conclusion**

For the reasons set forth herein, the motion for summary judgment will be

granted in favor of Defendants.  Further, the motion for preliminary injunctive

relief will be denied.

An appropriate order will issue.

s/Sylvia H. Rambo
United States District Judge

Dated:  September 7, 2011.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAMEON DALEY,** | : | **CIVIL NO. 1:CV-10-02060** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **HARLEY LAPPIN**, *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## O R D E R

In accordance with the accompanying memorandum, **IT IS HEREBY**

**ORDERED THAT**:

1) The motion for summary judgment (Doc. 23) is **GRANTED**.

2) The Clerk of Court is directed to **ENTER** judgment in favor of

Defendants and against Plaintiff.

3) The motion for a preliminary injunction and temporary restraining order

(Doc. 4) is **DENIED**.

4) The Clerk of Court is directed to **CLOSE** this case.

5) Any appeal from this order is **DEEMED** frivolous and not in good faith.

*See* 28 U.S.C. § 1915(a)(3).

                                                __s/Sylvia H. Rambo_____
                                                United States District Judge

Dated:  September 7, 2011.